**WISE, Appellant,**

**v.**

**OHIO DEPARTMENT OF REHABILITATION & CORRECTION, Appellee.**

[Cite as *Wise v. Ohio Dept. of Rehab. & Corr.* (1994), 97 Ohio App.3d 741.]

Court of Appeals of Ohio,
Franklin County.

No. 94API01–52.

Decided Sept. 27, 1994.

742

· *Robert H. Cohen Co., L.P.A.,* and *Robert H. Cohen; Swedlow, Butler & Levine Co., L.P.A.,* and *Richard L. Levine,* for appellant.

*Lee Fisher,* Attorney General, and *Velda K. Hofacker,* Assistant Attorney General, for appellee.

McCormac, Judge.

Christine Wise, plaintiff-appellant, commenced an action in the Court of Claims of Ohio seeking compensatory and punitive damages for an alleged illegal strip search conducted at the Chillicothe Correctional Institute on March 10, 1991. By order of the Court of Claims, the issues of liability and damages were bifurcated. After trial of the liability issue was conducted, the court issued findings of fact and conclusions of law holding that (a) there was reasonable suspicion to conduct a search of plaintiff pursuant to R.C. 5120.421; (b) defendant had conducted a "strip search" and not a "body cavity search" of plaintiff; and (c) defendant had not unreasonably invaded plaintiff's privacy in conducting the search. Judgment was entered for defendant from which plaintiff has filed a timely notice of appeal asserting the following assignments of error:

"I. The Court erred by finding that the Defendant had the requisite reasonable suspicion authorizing a search pursuant to ORC § 5120.421.

"II. The Court erred by finding that visitors to a prison institution are subject to strip searches or body cavity searches, and that such searches are acceptable to a reasonable person and therefore are not an invasion of privacy.

"III. The Court erred by finding that the search conducted by defendants was a strip search and not a body cavity search, as each term is defined by ORC § 5120.421(D)."

Christine Wise, the wife of an inmate at the Chillicothe Correctional Institute, arrived to visit her husband on March 10, 1991. At that time, she was informed that she must submit to a strip search or she would not be allowed to visit her husband and that, if she refused to submit to the search, her visiting privileges would be suspended for ninety days. Based upon her desire to visit her husband and to·avoid suspension of her visiting privileges, she submitted to the search. No contraband was found.

The search was authorized by Warden Morris based upon an anonymous letter which he received on March 6, 1991. The letter was purportedly written by the wife of another inmate, who stated that she had personally observed plaintiff passing drugs to her inmate husband by use of small balloons, which her husband swallowed immediately. The author of the letter claimed that her reason for anonymity was fear of retaliation against her husband. Warden Morris testified

that the details of the letter concerning the method of transfer of drugs was one that he, through experience, knew was one of the main methods for smuggling drugs into a prison. In light of the desire by the Governor and him to have a drug-free prison, he ordered the search of plaintiff the next time she visited the prison, feeling that the anonymous letter provided sufficient reasonable suspicion to warrant a strip search. The trial court held that the anonymous letter was sufficient to provide reasonable suspicion for the warden to order the search in compliance with R.C. 5120.421.

The evidence at trial disclosed that plaintiff had once experienced a minor problem of allegedly bringing a tape cassette concealed in her Bible to the prison in violation of prison rules years ago while doing ministry work, and before her marriage to her inmate husband. There is no indication that the warden was aware of that violation if, in fact, it was a violation. Mr. Wise was not known by the warden to be a drug user or to be engaged in illicit drug trafficking. His record did contain the statement of possession of a single tablet of Motrin which, while not a drug of abuse, was possessed contrary to prison rules. However, it is doubtful that the warden was aware of that violation which had occurred a number of years before ordering the search. The trial court based its finding of reasonable suspicion *solely* upon the contents of the anonymous letter, which described the method of transfer of drugs and that plaintiff would continue to transfer drugs in a similar manner to her husband at her next visit.

. R.C. 5120.421 provides that in order to conduct a strip search:

" * * * [T]he highest officer * * * shall expressly authorize the search on the basis of a reasonable suspicion, based on specific objective facts and reasonable inferences drawn from those facts in the light of experience, that a visitor proposed to be so searched possesses, and intends to convey or already has conveyed, a deadly weapon, dangerous ordnance, drug of abuse, or intoxicating liquor onto the grounds of the institution * * *."

Warden Morris testified that he authorized the search based upon the anonymous letter, as it was very specific in identifying plaintiff as the person who would bring drugs into the institution. He said that, based upon his many years of experience in corrections, the letter was extremely believable and contained detailed facts which led him to believe that the anonymous writer personally observed the instance which she described in the letter. He further indicated that anonymous tips were, in fact, common, since inmates within an institution would fear retaliation if their identities became known. He said that anonymous tips were often fruitful and that he felt the best means for determining whether the allegations were true was to order the strip search. On cross-examination, he acknowledged that some anonymous tips did not pan out.

■ The legal issue posed in this assignment of error is whether an anonymous letter, even one which is detailed and facially believable, can provide the sole grounds for reasonable suspicion to comply with the requirements of R.C. 5120.421(D).

■ Because of the inherently offensive nature of a strip search, federal courts (*e.g., Hunter v. Auger* [C.A.8, 1982], 672 F.2d 668) have held that strip searches of prison visitors violate the Fourth Amendment to the United States Constitution if conducted without meeting the threshold standard of reasonable suspicion. The General Assembly of Ohio codified this approach when it adopted R.C. 5120.421(D). While a prison visitor is not entitled to the full protection afforded by a probable cause standard, this statute, nevertheless, mandates the lesser standard of reasonable suspicion. Regardless of the laudable purpose and necessity of preventing the smuggling of weapons or drugs into a prison, the state does not have the unfettered right to strip search a prison visitor, but must be able to articulate some credible evidence which would lead an objective observer to believe that "a deadly weapon, dangerous ordnance, drug of abuse, or intoxicating liquor" is being transported into the prison. The only fact that the warden possessed when he ordered the search was that he had received an anonymous letter accusing plaintiff of smuggling drugs into the prison and intending to continue to so smuggle them to her husband, and describing a method that the warden, through his experience, knew to be one used to smuggle drugs into the institution. The reasonable inference sought to be drawn from that letter is that the allegations are true because reliable tips are sometimes received anonymously, and because the letter named appellant and contained some detail as to method.

In *Hunter, supra,* a court held that an anonymous tip containing a mere allegation of an attempt to carry drugs into a prison was insufficient to meet the standard of reasonable suspicion required by the Fourth Amendment. The court held that to justify reasonable suspicion, there must be further investigation and some measure of corroboration.

In this case, there was no further investigation and the only corroboration was that plaintiff appeared for her regular visit, a fact which could have been known by a spiteful person seeking to cause her trouble. The details of the letter describing a regularly used method for passing the drugs does not corroborate reasonable suspicion against plaintiff, since it also is subject to lack of corroboration tying her to that method. An anonymous letter writer could as easily have obtained information about this method from her own inmate husband, from something she read, or from observing someone else transporting drugs. These details do not provide the required additional corroboration. The end result is that the information provided the warden was only as reliable as the person who

authored the letter. Since she was anonymous, there was no corroboration sufficient to supply the reasonable suspicion required by R.C. 5120.421(D). Appellee's attempt to distinguish *Hunter* on the basis that the anonymous tip in *Hunter* was not made with the detail of the letter herein is rejected. Commonly known details of a method of smuggling drugs add little, if anything, to the accusation of an unknown tipster. The details do not "self-authenticate" the anonymous letter so that it alone may provide the reasonable suspicion against plaintiff. All allegations against plaintiff depend upon the completely unknown credibility of the anonymous writer. While it is possible that an anonymous tip may provide sufficient verifiable and verified details to amount to reasonable suspicion, it did not in this case.

Appellant's first assignment of error is sustained.

■ Because of the invasive nature of a strip search or a body cavity search, the General Assembly has set forth, through R.C. 5120.421, specific requirements for the conduct of those searches. First, unlike for the metal detector and package content searches to which all visitors to the institution may constitutionally be required to submit, there must be reasonable suspicion and an order by the highest officer present at the institution as described previously. The reason for the additional requirements is that those types of searches are ones that are almost inherently objectionable to a reasonable person, unlike the usual search by metal detectors or the search of briefcases or packages. The trial court found that a strip search is not an intrusion that would be objectionable to a reasonable person. We differ with that finding, as we believe the General Assembly did in its enactment of R.C. 5120.421. If there was a violation of R.C. 5120.421(D) by the failure of the state to comply with the reasonable suspicion standard prior to this search, as we have held that there was, it was an invasion of privacy, since it was an intrusion that is objectionable to a reasonable person. Plaintiff objected vehemently to the search and consented only to protect her visitation rights. Thus, the trial court erred in holding that the statutory violation did not amount to an invasion of privacy compensable by appropriate damages. These damages may be nominal, depending upon the evidence adduced in the damage phase of the trial. See *Hunter, supra,* 672 F.2d at 677.

Appellant's second assignment of error is sustained.

■ In her third assignment of error, plaintiff asserts that the trial court erred in finding that the search was a strip search rather than a body cavity search.

The search was conducted by two female correction officers. Plaintiff was instructed to remove her clothing, one garment at a time. Each item was given to the officers and inspected. Upon removing all her clothing, plaintiff was then asked to open her mouth and expose her underarms. She was also requested to

cough three times and to squat three times. Finally, she was asked to bend over and spread her buttocks. The officers physically observed her anus and vagina and saw that nothing was protruding from either cavity. Neither of the officers touched her or used any instrument or apparatus to touch her.

Plaintiff argues that the search was a body cavity search rather than a strip search and that it further violated R.C. 5120.421 in that a body cavity search must be conducted by medical personnel.

R.C. 5120.421(A) defines the two types of searches as follows:

"(1) 'Body cavity search' means an inspection of the anal or vaginal cavity of a person that is conducted visually, manually, by means of any instrument, apparatus, or object, or in any other manner.

" * * *

"(5) 'Strip search' means an inspection of the genitalia, buttocks, breasts, or undergarments of a person that is preceded by the removal or rearrangement of some or all of the person's clothing that directly covers the person's genitalia, buttocks, breasts, or undergarments and that is conducted visually, manually, by means of any instrument, apparatus, or object, or in any other manner."

The issue here is whether the inspection was of the anal or vaginal cavities, rather than of the genitalia or buttocks. While the position in which plaintiff was required to submit herself by means of squatting and spreading her buttocks did expose the openings to the anal and vaginal cavities, it was not an inspection of those cavities within the meaning of R.C. 5120.421(A)(1). Only the entrances to the body cavities were exposed, not the body cavities themselves, for the sole purpose was to see if an object such as a string to a balloon or end of the balloon could be observed in the opening. This type of exposure would not require the presence of medical personnel as would examination of the body cavity itself.

Appellant's third assignment of error is overruled.

Appellant's first and second assignments of error are sustained, and appellant's third assignment of error is overruled. The judgment of the trial court is reversed. The cause is remanded to the trial court to determine what damages are available for the statutory violation which resulted in an invasion of privacy of plaintiff.

*Judgment reversed
and cause remanded.*

PEGGY BRYANT, J., concurs.

CLOSE, J., dissents.

JOHN W. McCORMAC, J., retired, of the Tenth Appellate District, sitting by assignment.

CLOSE, Judge, dissenting.

As I cannot agree with the majority's assessment of the first and second assignments of error, I must respectfully dissent.

R.C. 5120.421 requires the warden to make a strip search to be performed by the "highest officer" based on a "reasonable suspicion, based on specific objective facts and reasonable inferences," and "in the light of experience" of that highest officer. We know from the record that an anonymous letter was written prior to the visitation in question. That letter was reasonably articulate, identified in detail how the writer of the letter came to know the facts related, described in detail how the passing of drugs took place, and even indicated that, on a normal basis, there was more than one balloon conveyed. We know that the warden "probably looked at the file" and that this defendant had previously been ticketed for possession of a contraband substance.

We have now placed the warden in a position where, with an articulate letter, the majority finds that there was not sufficient, objective facts giving rise to a reasonable suspicion which the warden, in light of his years of experience, could come to in determining to order the strip search. This gives proper deference neither to the warden at the institution nor to the trial court.

In this particular case, there was not a summary judgment. There was not a directed verdict. There was a decision on the merits by the trial court. The trial court, in the use of its discretion, found that there was a reasonable suspicion based on specific objective facts and reasonable inferences drawn from those facts in light of the experience of the warden. We exceed our standard of review in overruling that factual determination. Although retaliatory tips are sometimes given, that does not mean that the detail of this letter could not ever rise to the level of reasonable suspicion. The fact that it was anonymous is irrelevant and there was a reasonable suspicion based on this letter which, in hindsight, we should not take issue with. The fact that the prisoner in this case did not have a record of drug abuse is likewise irrelevant. If the prison warden knew from whom all of the drug problems came, there would no longer be a drug problem in the prison. It simply is irrelevant to the case at hand.

Under the circumstances, I would hold that the warden made a reasonable determination, and the trial court's determination that the warden was correct was not an abuse of discretion. Therefore, I would affirm the judgment of the Ohio Court of Claims in its entirety.